UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARNOLD TREVINO, | ) | CV F 03 6738 OWW SMS HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | [Doc. #4] |
| | ) | |
| KATHY MENDOZA-POWERS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

On December 3, 2003, Petitioner filed a petition for writ of habeas corpus in this Court. On February 4, 2004, Petitioner filed a first amended petition. On April 12, 2004, Respondent filed an answer to the petition. On May 20, 2004, Petitioner filed a traverse to Respondent's answer.

On March 15, 2005, Petitioner filed a motion to stay the proceedings. The motion was granted on April 25, 2005, and the matter was stayed.

On July 20, 2005, Respondent filed a request to file a supplemental answer to the petition because of recent decisions of the California Supreme Court and the District Courts in this area of

law. Respondent attached the proposed supplemental answer to the request. On July 22, 2005, Petitioner filed a request to lift the stay of the proceedings.

On August 2, 2005, the Court granted Petitioner's request to lift the stay and granted Respondent's motion to file a supplemental brief. On August 22, 2005, Respondent filed a supplemental brief, and Petitioner filed a supplemental traverse on September 9, 2005.

**BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction by jury trial on April 8, 1987, of murder in the second degree in violation of Cal. Penal Code § 187. See Exhibit A, Respondent's Answer to Petition (hereinafter "Answer"). On April 9, 1987, Petitioner was sentenced to serve an indeterminate prison term of sixteen years to life. Id.

On April 3, 2001, a parole suitability hearing was held by the California Board of Prison Terms ("BPT"). At the conclusion of the hearing, the BPT denied parole and deferred consideration for two years. See Exhibit B, Answer.

On July 17, 2002, Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court. See Exhibit J, First Amended Petition for Writ of Habeas Corpus (hereinafter "Petition"). On August 15, 2002, the Tulare County Superior Court summarily denied the petition for failure to state and establish a prima facie case for relief. Id.

On September 23, 2002, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District (hereinafter "5th DCA"). See Exhibit K, Petition. On October 10, 2002, the 5th DCA summarily denied the petition without comment or citation to authority. Id.

On November 14, 2002, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Exhibit F, Answer. On July 30, 2003, the petition was summarily denied without comment or citation to authority. See Exhibit G, Answer.

On December 3, 2002, Petitioner filed a petition for writ of habeas corpus in this Court. On

---

[1] This information is derived from the first amended petition for writ of habeas corpus and Respondent's answer to the petition.

February 4, 2004, Petitioner filed a first amended petition. The amended petition for writ of habeas corpus does not challenge the underlying conviction; rather, it challenges the April 3, 2001, decision of the California Board of Prison Terms which determined Petitioner unsuitable for parole. The petition presents the following claims: 1) "The Board of Prison Terms' failure to follow the mandates of Penal Code Section 3041 to "normally" set a parole date at the "initial suitability hearing" and violates the Ex Post Facto Clause and Petitioner's right to due process under Article 1, §10 of the California Constitution and the Fourteenth Amendment of the Federal Constitution"; 2) "The Board of Prison Terms' finding that Petitioner's offense was carried out in a calculated manner; that demonstrated exceptionally callous disregard for human suffering, and the motive for the crime was very trivial in relationship to the offense; ignored the evidence violating case and regulatory law and violated his state and federal rights to due process and equal protection of the law"; 3) "The Governor and Board of Prison Terms have implemented an illegal policy denying parole to [almost] all suitable indeterminately sentenced inmates; this violates Penal Code § 3041 and Petitioner's right to a fair hearing and state and federal due process"; 4) "The Board's finding that Petitioner has programmed in a limited manner and needs therapy in order to face, discuss, understand and cope with stress in a non-destructive manner and requiring Petitioner to undergo therapy as a pre-condition for parole consideration; continuing to hold Petitioner as an unpredictable risk to others; ignores all evidence presented at the hearing indicating parole suitability and violates case law; statutory law and his right to a fair hearing and state and federal due process"; 5) "The Board illegally denied Petitioner parole because the district attorney's office and the police department opposed parole, violating his right to a fair and meaningful hearing, a violation of state and federal constitutional rights to due process and equal protection of the law"; 6) "The Board's re-litigation of unchanged circumstances of Petitioner's commitment offense in order to find him "unsuitable" for parole violates the Fifth Amendment to double jeopardy and the Fourteenth Amendment of due process clauses"; 7) "The Board is violating Penal Code Section 3041.5(b)(2) and the Petitioner's right to state and federal due process, by failing to conduct his subsequent parole consideration hearings within the applicable time frame and by failing to compensate him for the delays"; and 8) "Petitioner has been denied his right to a complete and meaningful review of his claims in violation

of state and federal due process. The Superior Court's opinion erred [sic] of law facts so severe, that it cannot be fairly said the Petitioner received the legal process to which his [sic] is constitutionally entitled to under Fourteenth Amendment; <u>Hicks v. Oklahoma</u> (1980) 447 U.S. 343, 346. Appellant [sic] and Supreme Courts made decision to deny Petitioner's writ and failed to disclose reasons for denial, a violation of California Rules of Court, 4.551(a)(4)(B) and (g); <u>People v. Romero</u> (1994) 8 Cal.4th 728, 737; <u>In re Scott</u> (1994) 27 Cal.App.4th 946."

## DISCUSSION

<u>I.  Standard of Review</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. <u>White v. Lambert</u>, 370 F.3d 1002, 1006 (9th Cir.2004); <u>Sass v. California Board of Prison Terms</u>, 376 F.Supp.2d 975, 978 (E.D. Cal.2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003). However, where, as here, the state courts have not addressed the constitutional issue in dispute in a reasoned opinion, the federal court will independently review the record in adjudication of that issue. Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003).

II.  Subject Matter Jurisdiction

Petitioner contends that his constitutional rights were violated, and he was deprived of liberty without due process of law, when the BPT failed to set a parole release date at his parole hearing on April 3, 2001. Petitioner contends that the language of the California parole statutes creates a presumptive entitlement to, and thus has a liberty interest in, the setting of a parole release date. Because Petitioner is challenging the actions of a state, the Court will proceed under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  In certain cases, a state law may create a liberty interest protected by the Constitution. In examining questions of procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or property interest which has been interfered with by the State, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Thus, the first question that must be answered is whether there exists a liberty interest protected by the Due Process Clause. The United States Supreme Court has expressly denied entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). "Nevertheless, early release statutes can create a 'liberty interest protected by due process guarantees.'" Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per curiam), *quoting* Greenholtz, 442 U.S. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion." Bermudez, 936 F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985). However, no protected entitlement to release exists unless a state scheme includes a formula which mandates release after the occurrence of specified events. Baumann, 754 F.2d at 844 (stating that the unique "shall/unless" formula was decisive in Greenholtz). If there exists mandatory language in a parole statute, then Petitioner has a protected liberty interest in parole release. Greenholtz, 442 U.S. at 11-12. If, however, the state merely holds out the possibility of parole, then such a hope is not protected by due process. Id.; Baumann, 754 F.2d at 844. Therefore, the Court must look to the California parole statutes to determine whether the unique structure and language of those statutes creates an entitlement to parole release or a presumption of expectation of parole release.

The relevant California statutory language is contained in Cal. Penal Code § 3041, which states, in relevant part:

> (a) One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and *shall normally set a parole release date* as provided in Section 3041.5.
>
> (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting . . . .

Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

The language in Cal. Penal Code § 3041 provides for the possibility of parole. A release date

*shall* be set *unless* the BPT determines that the prisoner should not be released. The word "shall" is not used in an absolute or mandatory sense. Sass, 376 F.Supp.2d at 981. It is qualified or modified in both subsections. Thus, parole is not automatic; it is discretionary. Nevertheless, the Ninth Circuit Court of Appeals, without the assistance of a definitive California Supreme Court interpretation, found the language in § 3041 to be mandatory. See McQuillion v. Duncan, 306 F.3d 895 (9th Cir.2002).

In 2005, in In re Dannenberg, 34 Cal.4th 1061, 1087 (2005), the California Supreme Court provided a definitive interpretation of § 3041's structure and language. In Dannenberg, the California Supreme Court held: 1) the language in § 3041 is not mandatory; 2) there is no right to parole in California; 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a parole date; and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any expectancy an inmate may have in parole found in § 3041(a). Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98; Sass, 376 F.Supp.2d at 981.

This Court is therefore faced with conflicting interpretations from the Ninth Circuit and the California Supreme Court. Normally, the Court would defer to the Ninth Circuit's interpretation of the state statute; however, circuit opinions are only persuasive authority. Clark, 331 F.3d at 1069; Duhaime, 200 F.3d at 600-01. On the other hand, "[w]hen a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive." Sass, 376 F.Supp.2d at 982, *citing* Gurley v. Rhoden, 421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); see also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state law). As noted by this Court in Sass, the general principle of deference to state court interpretations is compelled by the Supreme Court's clearly established habeas corpus jurisprudence. See, e.g., Greenholtz, 422 U.S. at 12, *citing* Bishop v. Wood, 426 U.S. 341, 345, 346 n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (demonstrating deference to, and the need for, holdings and interpretations of state supreme courts when establishing interests protected by due process); Allen, 482 U.S. 369, 377 n.8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (implying that a Montana

1 Supreme Court decision would have been instructive if there had been one on point).

2     Therefore, this Court will defer to the California Supreme Court's interpretation of § 3041 in
3 Dannenberg. The California Supreme Court answers the first question: the language of § 3041 is not
4 mandatory. Dannenberg, 34 Cal.4th at 1087-88. The absolute sense of the word "shall" is eviscerated
5 by the modifications ("shall *normally* set") and qualifications ("shall . . . *unless it determines*")
6 contained in the subsection. Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).
7 Furthermore, "the lack of mandatory language in § 3041, especially when considered in light of 1)
8 California's long standing jurisprudence denying the existence of a parole right, 2) the statutory
9 scheme of § 3041, and 3) the broad discretion given to the BPT under the "noncapital murderers"
10 exception to California's determinant sentencing law, precludes a legitimate expectation of parole
11 release and, thus, does not give rise to an associated liberty interest under clearly established federal
12 law." Sass, 376 F.Supp.2d at 982-983, *citing* Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98.
13 Therefore, as this Court held in Sass, "the unique structure and language of § 3041 precludes the
14 finding of a federal liberty interest in parole." Sass, 376 F.Supp.2d at 983. Consequently, the state
15 court determination that Petitioner's federal due process rights were not violated at his April 5, 2004,
16 parole hearing was not contrary to or an unreasonable of clearly established federal law. 28 U.S.C.
17 § 2254(d). In addition, because California's parole statutes do not give rise to a protected liberty
18 interest, this Court is without jurisdiction to entertain Petitioner's claims.

19     With respect to Petitioner's claim that the BPT's denial of parole violated Petitioner's state
20 constitutional rights, the claim is not cognizable in a federal habeas action, because generally, issues
21 of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We
22 have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "),
23 *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993)
24 (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a
25 constitutional violation, may not be corrected on federal habeas").

26     A.  Review in light of Supreme Court's Analysis in Sandin v. Conner

27     Although Petitioner does not claim a violation of his constitutional rights as determined in
28 Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), this Court is aware that

1  Sandin presents another analysis for assessing whether prisoners have a protected liberty interest.
2  In Sandin, the Supreme Court held that "States may under certain circumstances create liberty
3  interests which are protected by the Due Process Clause." 515 U.S. at 483-84. To determine whether
4  there is a state-created liberty interest, the Court must inquire whether the state action "imposes [an]
5  atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.
6  at 484. As noted by this Court in Sass, however, Sandin "is by no means clearly established in the
7  context of parole rights." Sass, 376 F.Supp.2d at 980. In Sandin, the Supreme Court determined
8  whether a prisoner's rights were violated in the context of his conditions of confinement, not the
9  possibility of his release from that confinement. Sandin, 515 U.S. at 480-81. In addition, Sandin did
10 not overrule Greenholtz or Allen. Id. at 483 n.5. Accordingly, Greenholtz and Allen remain
11 controlling law in the context of determining whether Petitioner has a liberty interest in parole.
12 Indeed, the Supreme Court has cited Greenholtz and Allen approvingly following Sandin as
13 examples of cases where state statutes have created liberty interests through the use of mandatory
14 language. See I.N.S. v. St. Cyr, 533 U.S. 289, 345-46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

15        In any case, Petitioner does not have a protected liberty interest even if Sandin were applied.
16 As correctly noted by Respondent, every California prisoner serving an indeterminate prison term is
17 subject to the statutory maximum term unless the BPT fixes a shorter term. See Dannenberg, 34
18 Cal.4th at 1097-98. Therefore, the BPT's denial of parole cannot possibly impose an "atypical or
19 significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515
20 U.S. at 484. Consequently, California's parole statutes do not give rise to a protected liberty interest
21 under the Supreme Court's test in Sandin.

22 III. Review of Petition

23        Notwithstanding the Court's finding of a lack of subject matter jurisdiction, the Court will
24 address the merits of the petition.

25        A parole release determination is not subject to all the due process protections of an
26 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir.1987); see also
27 Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
28 protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a

criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). In <u>Greenholtz</u>, the Supreme Court held that a parole procedure satisfies due process when 1) the procedure "affords an opportunity to be heard," and 2) the inmate is informed "in what respects he falls short of qualifying for parole." <u>Greenholtz</u>, 442 U.S. at 16. Further, the requirements of due process are satisfied if "some evidence" supports the decision. <u>Biggs v. Terhune</u>, 334 F.3d 910, 915 (9th Cir.2003); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 904 (9th Cir.2002); <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389 (9th Cir.1987) (adopting the "some evidence" standard set forth by the Supreme Court in <u>Superintendent v. Hill</u>, 472 U.S. 445, 456, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). "Additionally, the evidence underlying the board's decision must have some indicia of reliability." <u>Jancsek</u>, 833 F.2d at 1390.

In the instant case, even if Petitioner has a protected liberty interest in the parole board's determination of his minimum term and release date parole, the BPT's decision to deny parole does not violate due process because Petitioner received all the process due. Petitioner had an opportunity to be heard at the challenged April 3, 2001, parole hearing. Relevant factors were discussed and taken into account, such as the facts of the crime, Petitioner's mental state at the time of the crime, past and present attitude toward the crime, his past criminal history and history of drug abuse, his education at the time of the offense, his education and vocational training while incarcerated, his criminal history and behavior while incarcerated, his present mental state, and his post-release plans. <u>See</u> Exhibit B, Answer; Cal. Penal Code § 2402(c). In addition, Petitioner had advance notice of the hearing date and time, he was represented by his attorney at the hearing, and he offered mitigating factors for the Board's consideration, such as his motivation for the crime, institutional behavior, and plans for the future. <u>See</u> <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek</u>, 833 F.2d at 1390; Cal. Penal Code § 2402(d). Upon conclusion the hearing, it was the judgment of the panel that Petitioner would pose an unreasonable risk of danger to society if released from prison.

The parole board informed Petitioner of the reasons for its finding of parole unsuitability, and the decision was supported by "some evidence." <u>See</u> <u>Greenholtz</u>, 442 U.S. at 16. Under Cal. Penal

Code § 2402(c), the circumstances that may be taken into account in finding a prisoner unsuitable for parole are as follows:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

In determining Petitioner to be unsuitable, the panel noted that the offense was carried out in a "dispassionate and calculated manner." Cal. Penal Code § 2402(c)(1)(B) See p. 62, Exhibit B, Answer. This finding is supported by the facts of the incident, as summarized by the panel:

> [O]n September the 12th, 1986, in the city of Porterville, the defendant, the prisoner, with the use of a knife, stabbed Ricky Blanton, . . ., three time to the degree that it resulted in his death. The stabbing was a result of an earlier altercation at a party in which Mr. Trevino, which you left and returned, and while the victim was laying [sic] on the couch or sitting on the couch, unaware or not cognizant of the fact that you were in the area, you stabbed him three times and it resulted in his death.

See p. 62-63, Exhibit B, Answer. Petitioner's act of stabbing the victim while the victim was either asleep or not cognizant of Petitioner's presence clearly demonstrates a calculated and dispassionate act. Petitioner did in fact commit an execution-style murder. Therefore, there is "some evidence" supporting this finding.

1     Next, the panel noted that Petitioner acted in a "cruel and callous manner" which
2  "demonstrates a callous disregard for human suffering." Cal. Penal Code § 2402(c)(1)(D); See p. 62,
3  Exhibit B, Answer. In order to demonstrate "an exceptionally callous disregard for human suffering"
4  (§ 2402, subd. (c)(1)(D)), the offense in question must have been committed in a more aggravated or
5  violent manner than that ordinarily shown in the commission of second degree murder." In re Scott,
6  119 Cal.App.4th 871 (2004). "[E]xamples of aggravated conduct reflecting an "exceptionally callous
7  disregard for human suffering," are set forth in Board regulations relating to the matrix used to set
8  base terms for life prisoners (§ 2282, subd. (b)); namely, "torture," as where the "[v]ictim was
9  subjected to the prolonged infliction of physical pain through the use of non-deadly force prior to act
10 resulting in death," and " severe trauma," as where "[d]eath resulted from severe trauma inflicted
11 with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple
12 wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce
13 terror in the victim." In re Van Houten, 116 Cal.App.4th 339, 351 (2004). Thus, the panel's finding
14 is not supported by some evidence. Petitioner's act of stabbing the victim while the victim was
15 asleep, though callous and dispassionate, does not constitute the type of "callous disregard for human
16 suffering" contemplated by § 2402(c)(1)(D).

17     The panel also reasoned that the motive for the crime was "very, very trivial in relationship to
18 the actual crime." Cal. Penal Code § 2402(c)(1)(E).  The facts demonstrate that Petitioner and the
19 victim became involved in a verbal altercation which quickly became physical. Petitioner lost the
20 fight and was physically kicked out of the house.  In retaliation, Petitioner entered the house after the
21 victim had fallen asleep or was otherwise not cognizant of Petitioner's presence. Petitioner stood
22 over the victim, raised his knife, and stabbed the victim repeatedly. The victim succumbed to his
23 wounds and died shortly thereafter. The Court finds the panel's conclusion to be well-supported by
24 the evidence. Petitioner's reason for committing the murder - being humiliated - hardly justifies his
25 cold, dispassionate act of stabbing the victim to death while the victim was unaware.

26     The panel also found that Petitioner's past criminal history, although non-violent, together
27 with his conduct while in prison warranted unsuitability. Cal. Penal Code §§ 2402(c)(2), 2402(c)(6).
28 These findings are not supported by the evidence.  Although Petitioner had committed several

offenses prior to the instant offense, none of those offenses were violent. Petitioner's criminal history was mostly comprised of alcohol-related crimes. See p. 63, Exhibit B, Answer. Therefore, the panel's finding of unsuitability pursuant to § 2402(c)(2) is not supported. Likewise, while Petitioner committed several acts of misconduct in prison, all of those acts had taken place 10 years earlier with the exception of Petitioner's participation in a work strike which can hardly be construed as serious misconduct. See p. 63, Exhibit B, Answer. For the last 10 years, Petitioner's history is devoid of misconduct. Therefore, the panel's finding of unsuitability pursuant to § 2402(c)(6) is unsupported.

Finally, the panel found the most recent psychological evaluation of Petitioner not fully supportive of suitability. Cal. Penal Code § 2402(c)(5); see p. 64, 66, Exhibit B, Answer. The relevant comments by the psychologist are as follows:

> Subject has programmed exceptionally well during his 13 years of incarceration. Violence potential is average for incarcerated inmates. The pivotal and significant factor in this Subject's successful adjustment to the community rests mainly on his ability to continue, in an open system, his abstinence from alcohol and drugs. It seems rather clear that Subject knows exactly when he entered a state of sobriety regarding alcohol, but concern remains for his inability to pinpoint a similar date of his abstinence from drugs while in prison.

See p. 4, Exhibit C, Answer.

The psychologist's comments support the panel's finding. Although the psychologist found Petitioner had programmed "exceptionally well" while incarcerated, the psychologist expressed concern over Petitioner's history of drug abuse and his potential to fall back into abusing drugs once released. Based on the psychologist's conclusion, the panel stated that Petitioner "has not yet completed the necessary programming," and recommended that Petitioner continue to seek therapy. Id. at 66. Because of the concern over Petitioner's ability to abstain from drugs and alcohol, the panel's conclusion that Petitioner posed an unreasonable risk of danger to society if released from prison was supported by "some evidence." Although Petitioner strongly argues that he does not suffer from a mental illness and he provides several excerpts from psychologists who have reviewed him in the past and confirm these arguments, these excerpts do not address Petitioner's history of drug abuse and do not belie the fact that some evidence supported the panel's findings.

In sum, the decision of the BPT to deny parole based on Cal. Penal Code §§ 2402(c)(1)(B), 2402(c)(1)(E), 2402(c)(5) complied with due process and was supported by some evidence. The

panel's findings for all other noted factors are not supported by the evidence. In <u>Biggs v. Terhune</u>, the Ninth Circuit cautioned the BPT regarding its continued reliance on the gravity of the offense. 334 F.3d at 916. Here, however, the BPT's decision also relies on Petitioner's problematic history of alcohol and drug abuse. Nevertheless, as in <u>Biggs</u>, should Petitioner demonstrate unequivocal evidence of rehabilitation, continuing to deny him a parole date simply because of the nature of his offense would raise serious questions involving his claimed liberty interest, should it be found that Petitioner possesses a protected liberty interest in parole. <u>Id</u>.

Petitioner raises a number of arguments with respect to his denial of parole, including claimed violations of his equal protection rights and his right to be free from double jeopardy. As correctly argued by Respondent, these claims center on violations of state law which do not rise to the level of a constitutional violation. In addition, the claims are not supported by specific facts or arguments demonstrating how his federal rights were violated. Petitioner's broad assertions of violations of constitutional rights do not transform his claims into a federal one. Merely placing a "due process" label on an alleged violation does not entitle Petitioner to federal relief. <u>Langford v. Day</u>, 110 F.3d 1386, 1388-89 (1996). <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d 199, 205 (9th Cir.1995) (Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim); <u>Greyson v. Kellam</u>, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); <u>see also</u> <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106 (9th Cir.1999), *citing* <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion).

As to Petitioner's claim that former Governor Davis had in effect a "no parole" policy, the California Supreme Court in <u>In re Rosenkrantz</u>, 29 Cal.4th 616, 685-86 (2002), determined that this was not the case, and there was not a "no parole" policy under Governor Davis.

In sum, Petitioner was given at least the minimum due process required under the Fourteenth Amendment. The Constitution does not require more. <u>Greenholtz</u>, 442 U.S. at 16. Petitioner has not demonstrated that the state court decision rejecting his claims was contrary to or an unreasonable application of clearly established Federal law. Consequently, his petition for writ of habeas corpus

should be denied.

## RECOMMENDATION

Accordingly, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be DENIED with prejudice and the Clerk of Court be DIRECTED to enter judgment.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     October 2, 2005                          /s/ Sandra M. Snyder**
icido3                                        UNITED STATES MAGISTRATE JUDGE